**Strimling v Armory Plaza, Inc.**

2024 NY Slip Op 31746(U)

May 20, 2024

Supreme Court, Kings County

Docket Number: Index No. 45669/2007

Judge: Wayne P. Saitta

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 29 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 20th day of May 2024.

P R E S E N T:

HON. WAYNE SAITTA, Justice.

---------------------------------------------------------------X

ARTHUR STRIMLING, LISA SEGAL, TIMOTHY PIETRZAK, CATHERINE SHANNON, BORIS GILZON, 393 16th STREET LLC, SVETLANA LAZAREV, and MEMORIAL BAPTIST CHURCH OF BROOKLYN,

Plaintiffs

-against-

ARMORY PLAZA, INC., ARMORY HEIGHTS, LLC, JACK LOCICERO, LORENZO LOCICERO, BRICOLAGE DESIGNERS, INC., HENRY RADUSKY, DOUGLAS PULASKI, SANCHEZ ASSOCIATES P.C., XINGJIAN CONSTRUCTION, INC., DIAMOND POINT EXCAVATING CORP., d/b/a DIAMOND POINT EXCAVATION CORP., and JAFCO GROUP INC.,

Defendants

---------------------------------------------------------------X

Index No. 45669/2007

DECISION AND ORDER

MS 86, 87 & 88

The following papers read on this motion:

NYSCEF Doc Nos

Notice of Motion/Order to Show Cause/
Petition/Affidavits (Affirmations) and
Exhibits

1225-1330 1383-1384

Cross-motions Affidavits (Affirmations)
and Exhibits

1335-1356

Answering Affidavit (Affirmation)

1370-1373 1416-1422 1430-1436

Reply Affidavit (Affirmation)

1366-1369 1423-1429 1450

Supplemental Affidavit (Affirmation)

These motions involve a fee dispute between former Plaintiff, 1504 REALTY LLC

(hereinafter "1504"), and its former attorneys, Hiller PC.

[* 1]

In 2007, five of the Plaintiffs were represented by Weiss & Hiller PC, a firm in which Michael Hiller, Esq ("Hiller") was a partner. Subsequently, Arnold Rosenshein, a principal of 1504, asked Michael Hiller to have Weiss & Hiller PC represent 1504: Weiss & Hiller PC substituted as counsel for 1504 in 2007, and its case was consolidated with the present case. In 2014, Michael Hiller formed a new firm, Hiller PC, which took over representation of the Plaintiffs, including 1504.

In 2019, 1504 decided to settle separately with Defendants and Hiller withdrew as its counsel. Hiller PC asserted a charging lien for legal services for the period from 2014 until June 2019 when they withdrew as attorneys for 1504. A charging lien has not been asserted for the period prior to 2014 when 1504 was represented by Weiss & Hiller PC.

1504 moved to vacate the lien, arguing that Hiller PC is entitled to no fees for the entire time it represented 1504 because Hiller PC was discharged for cause. 1504 asserts that the firm had a conflict in representing the Plaintiffs jointly from the beginning of the representation due to the possibility that there would not be sufficient assets to satisfy the claims of all the Plaintiffs.

Hiller PC cross moved to have the Court set the lien.

After a 13-day hearing, the Court issued a Decision and Order dated June 24, 2022, which denied 1504's motion to vacate Hiller PC's lien and reserved decision on Hiller PC's motion to set the amount of his lien pending a framed issue hearing.

In that Decision and Order, the Court found that Hiller PC was not discharged for cause, but that Hiller PC moved to be relieved as counsel after 1504 informed Hiller PC that it was interested in settling separately. Before the return date of the motion, 1504 consented to Hiller PC's withdrawal but reserved the right to challenge the charging lien.

2

[* 2]

The Court also found that 1504 had agreed that it would be billed for 50% of the hours incurred. This finding was based on the testimony of Michael Hiller and several other of the Plaintiffs as more fully set forth in the decision of June 24, 2022.

The Court did not find Arnold Rosenshein's testimony that there was no agreement as to how the hours would be split among the Plaintiffs, to be credible.

The Court further found that there was not an actual conflict in Hiller PC representing multiple Plaintiffs, and that a conflict only arose at the point that 1504 decided to pursue a separate settlement.

The Court further found that Hiller did not violate the Rules of Professional Conduct, as he had advised his clients of the potential conflicts involved in representing a group and did get informed consent of the Plaintiffs orally.

The Court further found that Hiller PC had demonstrated its claim for an account stated, as Rosenshein did not make specific objections to the accuracy of the invoices and had made several promises to pay the outstanding balance.

The Court declined to set the lien based on the invoices because Hiller informed the Court that some on the invoices included 100% of the hours incurred rather than 50%. The Court reserved decision on Hiller PC's cross-motion to set the lien, pending a framed issue hearing and granted 1504 limited discovery of the time entries of the employees of Hiller PC that were the basis for the invoices sent to 1504.

1504 has moved to renew its motion to vacate the charging lien, and has moved for sanctions. Hiller PC has cross-moved to set the amount of the lien without further hearing, and for sanctions.

3

[* 3]

**1504's Motion to Renew**

1504 bases its current motion to renew the denial of its motion to vacate the lien on the time entry records it received as part of that discovery.

1504 argues that the time entries are newly discovered evidence which demonstrates that Hiller's affirmations submitted in support of his lien and his testimony at the hearing were false and should be disregarded by the Court.

As a preliminary matter, none of the alleged inconsistencies go to whether the parties had agreed to a 50/50 split of hours; whether Hiller had an actual conflict in representing multiple Plaintiffs; or whether he advised his clients of the potential conflicts in joint representation.

The alleged inconsistencies between the time records and the invoices go to the share of hours actually billed to 1504, which the Court did not determine as part of the June 24, 2022 decision, but reserved for a framed issue hearing.

More importantly, once one sorts through the voluminous time entries and invoices, it becomes apparent that they do not support the assertion that Hiller lied in his testimony or in his affidavits.

To begin with, Hiller acknowledged in an affidavit in November of 2020 that 1504 had been charged 100% of the hours on the invoices between 2016 and 2018, and also acknowledged that fact during the hearing on the motion to vacate the lien.

The main contention of 1504 is that the entries of the hours by the employees of Hiller PC do not reflect the 50/50 split of hours testified to by Hiller.

It appears that 1504 is conflating the entry of hours by the attorneys and employees of Hiller PC with the invoices that were prepared by the office manager and sent to Rosenshein as principal of 1504.

4

Hiller testified that originally, the employees were instructed to split their hours 50% to Rosenshein and 50% to the other Strimling Plaintiffs.

Hiller testified that the employees were not splitting their hours consistently, so in 2014 he instructed the employees to allocate all of the hours to Rosenshein and instructed his assistant office manager, Irene Moy, who was responsible for preparing the invoices from the employee's time slip entries, to split the hours listed in the entries, and allocate 50% to Rosenshein and 50% to the other Strimling Plaintiffs.

The email, dated May 14, 2014, instructing Moy to split the hours 50% to Rosenshein and 50% to the other Strimling Plaintiffs, was introduced at the hearing.

Hiller testified that the hours on the invoices were split until January 2016 when Gina Mungioli was hired as office manager. He testified that unbeknownst to him, the new office manager was not splitting the time slip entries 50% to Rosenshein and 50% to the other Strimling Plaintiffs, but instead was including 100% of the hours on the invoices to Rosenshein.

Hiller testified that he did not instruct the new office manager to include 100% of the hours on the invoices to Rosenshein. He stated that he believes that the new office manager did not see the 2014 email to split the time entries 50% to Rosenshein and 50% to the other Strimling Plaintiffs.

Hiller testified at the hearing that Rosenshein was billed for 100% of the hours from January 2016 until November 2018.

Hiller testified that he discovered that Rosenshein had been billed for 100% of the hours as a result of investigating a claim by 1504's attorney, made during the course of the motion to vacate, that Rosenshein had been billed for 100% of the hours.

5

1504 argues that the timeslip entries, disclosed after the decision, contradict Hiller's testimony and his Supplemental Affidavit of November 20, 2020 that there was agreement to split the hours 50% to Rosenshein and 50% to the other Strimling Plaintiffs.

1504 further argues that the time entries demonstrate that Hiller instructed his staff in late 2015 to bill 100% to Rosenshein, and that they routinely billed 100% of their time to 1504 starting in 2016.

Again, 1504 is conflating two distinct practices. The first is how the attorneys and other employees allocated their hours when they entered their time. The second is whether the office manager split the time entries 50% to Rosenshein and 50% to the other Strimling Plaintiffs in preparing the invoices.

Similarly, 1504 misconstrues the fact that Moy billed 100% of her time to Rosenshein after 2016. Hiller's testimony was that it was Moy's job as assistant office manager to prepare the invoices and to split the time entries in preparing the invoices. After 2016, when she was working on this case entering exhibits in notebooks, she allocated 100% of those hours to Rosenshein. This was consistent with the directive to employees working on the case to allocate all of their hours to Rosenshein. It was then up to the new office manager, not Moy, to split Moy's hours between Rosenshein and the other Strimling Plaintiffs.

The time entries demonstrate that a number of the invoices are not accurate, but they do not actually contradict Hiller's testimony that beginning in 2014 he instructed his employees to allocate 100% of the hours to Rosenshein and that his new office manager failed to split the time entries 50% to Rosenshein and 50% to the other Strimling Plaintiffs.

6

[* 6]

Further, contrary to the contention of 1504, the Court did not rely on the 2020 spreadsheet prepared by Gina Mungioli. The Court did not consider the spreadsheet in reaching its decision because Hiller admitted that it contained inaccuracies. Also, the spreadsheet was not a record regularly kept in the course of business, nor was it a summary of business records that had been made available to 1504.

Further, although the Court found that Hiller PC made out its case for an account stated, Hiller's admission that some of the invoices included 100% of the hours, precluded setting the amount of the lien based on the invoices alone.

The Court declined to use the 2020 spreadsheet to determine which of the invoices included more the 50% of the hours, and instead directed a framed issue hearing be held to determine which of the invoices sent to 1504 included more than 50% of the hours.

As set forth above, the time entries disclosed after the decision do not contradict the testimony of Hiller. They do not contradict the findings of the Court that 1504 agreed to a 50/50 split of the hours, that Hiller was not discharged for cause, or that Hiller did not violate the Rules of Professional Responsibility in representing the Plaintiffs. Therefore, 1504's motion to renew must be denied.

**Hiller PC's cross-motion**

Hiller PC cross-moves to set the amount of a lien without a framed issues hearing arguing that the spreadsheets submitted by both sides resolve any questions of fact as to which invoices contained more than 50% of the hours.

In the decision of June 24, 2022, the Court held that Hiller PC had established its claim for an account stated but declined to set the amount of the charging lien because Hiller admitted that a number of the invoices sent to 1504 were based on 100% of the

7

hours rather than 50%. The Court reserved decision on Hiller PC's motion to set the lien and directed that there be a framed issue hearing on which of the invoices sent to 1504 included 50% of the hours and which included 100% of the hours.

Hiller PC argues that there is only a small number of invoices that are actually in dispute. Hiller PC that points out that it has not asserted a lien for any charges prior to 2014, the point when Hiller PC took over representation from Weiss & Hiller PC, and that it did not send any invoices to 1504 after November 2018.

Hiller PC further argues that there is no need for a hearing as to the invoices covering the period from January 2016 through November 2018 because it concedes that those invoices included 100% of the hours.

Hiller PC argues that a hearing is not needed about the invoices from 2014 and 2015 because the amount owed can be determined from comparing spreadsheets included in the papers submitted by both parties.

However, it is not clear from either the 2020 or 2023 spreadsheets submitted by Hiller PC which invoices contained 100% of the hours.

Further, the spreadsheets submitted by Hiller PC contain many adjustments to the account for perceived errors in the time entries. It is not entirely clear from the papers whether Hiller PC is seeking to adjust for alleged undercharges during the period of 2014 through 2016.

More importantly, the invoices not the spreadsheets are not the basis for the account stated claim.

The framed issue hearing is necessitated by the fact that Hiller PC concedes that the hours were not split on many of the invoices. The sole issue to be determined at the

8

[* 8]

framed issued hearing is which invoices represented 50% of the hours and which represented 100%.

To make this determination the Court must compare the invoices to the time slip entries for the same period of each invoice.

**Sanctions**

Both sides have sought sanctions against their adversary in connection with this motion and cross-motion. While the Court is denying both the motion and cross-motion, neither was so devoid of merit as to be frivolous or sanctionable.

WHEREFORE, it is ORDERED that the motion of 1504 to renew, and its motion for sanctions are denied; and it is further,

ORDERED, that Hiller PC's motion to set the amount of its charging lien based on the papers submitted, without a framed issue hearing, and for sanctions, is denied.

This constitutes the Decision and Order of the Court.

E N T E R:

_____
JSC

**HON. WAYNE SAITTA**
**J.S.C.**